Jay J. Chung (State Bar No. 181003)
Harry Kim (State Bar No. 156452)
V. Alan Arshansky (State Bar No. 251644)
LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Tel.   (213) 341-1602
Fax.  (213) 947- 4201
E-mail:  jaychung@leeanavchung.com

Attorneys for Defendant
STEVE LEE

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

SUPERIOR COURT OF THE STATE OF CALIFORNIA

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OCEAN TOMO, LLC, a Illinois Limited Liability Company, <br><br> Plaintiff, <br><br> vs. <br><br> STEVE LEE, an individual, <br><br> Defendant. | CASE NO. **SACV12-146JVS(MLGx)** <br><br> Honorable Judge James V. Selna <br><br> **DEFENDANT STEVE LEE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** <br><br> **[Filed Concurrently with Supporting Declaration of Steve Lee]** <br><br> Hearing Date: February 17, 2012 <br> Hearing Time:1:30pm <br> Place: Courtroom 10C |

/ /

/ /

/ /

/ /

# <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION……………………………………………………………...2

II.  STATEMENT OF FACTS……………………………………………………...3

    A.   Steve's Employment Background at Ocean Tomo………………...…………3

    B.   Resignation and Subsequent Consultancy……………………………………3

    C.   The Laptop Computer and Ocean Tomo Data...…………………………..…5

        a.   The Hard Drive Crash……………………………………………………5

        b.   The Ocean Tomo Data Back-Up……………………………………………7

    D.   The January 24, 2012 E-Mail to Ocean Tomo Regarding PatentRatings…..………8

    E. Improper Service of the TRO Application……………………………………9

III.  LEGAL ARGUMENT………………………………………......……………………10

    A.  IN AN EFFORT TO SECURE A PRELIMINARY INJUCTION FOR
        THE PURPOSE OF INTIMIDATION, PLAINTIFF HAS
        MISREPRESENTED FACTS TO THE
        COURT…………………………………………………………………..11

    B.  PLAINTIFF CANNOT FULFILL THE GENERAL
    C.  REQUIREMENTS FOR EQUITABLE RELIEF……………………………13

        i.   There is No Threat of Harm to Plaintiff…………………………13

        ii.   Plaintiff Unreasonably Delayed the Bringing of This Request
            for a Preliminary Injunction and Is Bringing This Request
            for an Improper Purpose…………………………………..………14

    D.  PLAINTIFF'S REQUEST FAILS THE GENERAL TEST FOR
        INJUNCTIVE
        RELIEF………………………………………………………………......15

        i.   Plaintiff Cannot Succeed on the Merits of Its Action Against
            Defendant Steve Lee…………………………………….…………15

            1.  Plaintiff Cannot Succeed on Its Misappropriation of Trade
                Secrets Claim……………………………………………………15

                a.   Plaintiff Has Not Identified the Trade
                b.   Secrets at Issue with Particularity………..………....15

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**OPPOSITION TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

c.  No Misappropriation Has Occurred………………16

2.  Plaintiff Cannot Succeed On Its Breach of Contract Claim....18

3.  Plaintiff Cannot Succeed on Its Cause of Action for Violation of California Penal Code Section 502……………………………………………...…19

4.  Plaintiff Cannot Succeed on Its Unfair Competition Cause of Action……..…………………………20

5.  Plaintiff Cannot Succeed on Its Cause of Action for Violation of 18 U.S.C. §1030………………..…...……21

ii.  Plaintiff Cannot Put Forth a Showing of Irreparable Harm……...22

iii.  The Balance of Equities Tips <u>SHARPLY</u> in Favor of Defendant Steve Lee………………………………………………………23

iv.  The Injunction Being Sought by Plaintiff is Not in the Public Interest…………………………………………………....24

E.  INJUNCTIONS OF THE TYPE SOUGHT BY PLAINTIFF ARE DISFAVORED BY THE COURTS.………...……………………………24

F.  THE INJUNCTION, AS SOUGHT BY THE PLAINTIFF, IS EXTREMELY BROAD AND VAGUE.…………………………….………………25

G.  IN THE UNLIKELY EVENT THE INJUNCTION IS GRANTED, PLAINTIFF MUST POST A BOND………………………………..…26

IV.  CONCLUSION………………………………………………….…..26

**LEE ANAV CHUNG LLP**
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**OPPOSITION TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

# TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

Amoco Production Co. v. Village of Gambell, Alaska,
    (1987) 107 S.Ct. 1396……………………………………………………………11

Blair v. Doctor's Co.,
    (1990) 222 Cal.App.3d 1048…………………………………………………… 23

Borland, Inc. v. Rolf  C. Hagen (USA) Corp.,
    (2010) 685 F.Supp.2d 1094…………………………………………………………17

Carribean Marine Services Co., Inc. v. Baldridge,
    (9th Cir. 1988) 844 F.2d 668……………………………………………… ….. 13

Capitol Records, LLC v. BlueBeat, Inc.
    (2010) 765 F.Supp.2d 1198…………………………………………………………15

City of Los Angeles v. Lyons
    (1983) 461 U.S. 95……………………………………………………………13

Clarity Services, Inc. v. Barney,
    (M.D. Fla. 2010) 689 F.Supp.2d 1309………………………………………………21

Cypress Semiconductor Corp. v. Superior Court,
    (2008) 163 Cal.App.4th 575……………………………………………………17

Earth Island Institute v. Carlton,
    (9th Circ. 2010) 626 F.3d 462…………………………………………………...10

Frank'S GMC Truck Center, Inc. v. General Motors Corp.,
    (3rd Cir. 1988) 847 F.2d 100……………………………………………………26

GoTo.com, Inc. v. Walt Disney Co.,
    (9th Cir. 2000) 202 F.3d, 1209…………………………………………………… 23

Goldie's Bookstore, Inc. v. Superior Court,
    (9th Cir. 1984) 739 F.2d 466……………………………………………………13

Granny Goose Foods, Inc. v. Brotherhood of Teamsters and
Auto Truck Drivers Local No. 70 of Alameda County,
    (1974) 415 U.S. 423……………………………………………………………26

Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,
    (4th Cir. 1999) 174 F.3d 411……………………………………………………26

iii

**OPPOSITION TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

Los Angeles Memorial Coliseum Commission v. National Football League,
    (9th Cir. 1980) 634 F.2d 1197…………………………………………………13

Mattel, Inc. v. MGA Entertainment, Inc.,
    (2011) 782 F.Supp.2d 911……………………………………..…………16

Miller v. California Pac. Med. Ctr.,
    (9th Cir. 1993) 991 F.2d 536……………………………….…………14

Neothermia Corp. v. Rubicor Medical, Inc.,
    (2004) 345 F.Supp.2d 1042……………………………………………...16

Original Great American Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.,
    (7th Cir. 1992) 970 F.2d 273……………………………………………23

Pasadena City Bd. of Ed. v. Spangler,
    (1976) 427 U.S. 424……………………………………………………...25-26

Penrose Computer Marketgroup, Inc. v. Camin,
    (N.D.N.Y. 2010) 682 F.Supp.2d 202………………………………………22

Precision Co. v. Automotive Co.,
    (1945) 324 U.S. 806……………………………………………………...23

Readylink Healthcare v. Cotton,
    (2005) 126 Cal.App.4th 1006. ……………………………………………25

Reichert v. General Ins. Co.,
    (1968) 68 Cal.2d 822. ………………………………………………18

Romer v. Green Point Sav. Bank,
    (2nd Cir. 1994) 27 F.3d 12……………………………………………...25

Ross-Simmons of Warwick, Inc. v. Baccarat, Inc.,
    (1st Cir. 1996) 102 F.3d 12……………………………………………15

Schrier v. University of Colorado,
    (10th Cir. 2005) 427 F.3d 1253……………………………………………24-25

Silvaco Data Systems v. Intel Corp.
    (2010) 109 Cal.Rptr.3d 2……………………………………………………15-16

Stromans, Inc. v. Selecky,
    (9th Cir. 2009) 586 F.3d 1109. ……………………………………………24

iv

Summers v. Earth Island Institute,
    (2009) 129 S.Ct. 1142……………………………………………………...10, 22

Weinberger v. Romero-Barcelo,
    (1982) 102 S.Ct. 1798…………………………………………………...............10

Winter v. Natural Resources Defense Council, Inc.,
    (2008) 129 S.Ct. 365……………………………………………………10, 15

**STATUTUES**

Cal.Civ.Code §3426.1(b)…………………………………………………………16-17

18 USC §§ 1030(a)……………………………………………….………21

**LOCAL RULES**

ED CA Local Rule 65-231(b) …………………………………………………14

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

**OPPOSITION TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Plaintiff Ocean Tomo, LLC's (hereinafter "Plaintiff" or "OT") Complaint and Ex-Parte Temporary Restraining Order and request for a Preliminary Injunction against Defendant Steve Lee (hereinafter "Defendant" or "Steve") are nothing more than a **campaign of intimidation** and an **attempt to stifle the litigation process** in order to prevent Steve from testifying truthfully in the arbitration between OT and PatentRatings.  These pleadings contain misrepresentations and half-truths fully deserving of Rule 11 sanctions.

Among the most glaring misrepresentations contained in the pleadings is the claim that Steve left OT's employ on September 16, 2011 and failed to timely return alleged confidential information.  The truth, as explained in more detail below, is that Steve – while announcing his intention to leave OT on September 16, 2011 – was asked by the executives of OT to remain as Managing Director until **September 30, 2011** and to then **stay on at OT** as a consultant on a independent contractor basis.  Steve did so, and stayed on as consultant through November 2011.  To date, there has been **no official termination** of his consultancy and, as such, in practical terms, Steve is still a consultant for OT.

Another glaring misrepresentation is the allegation that Steve improperly kept a laptop with alleged OT information on it.  However, as explained in detail below, as a consultant, Steve was to retain the laptop and Steve's retaining of the laptop was sanctioned by an OT executive.  When the human resources department asked for the return of the laptop, Steve promptly returned it to OT.  However, as he was performing consulting services for OT, Steve needed the data from the laptop to perform these services for OT.  As such, the data was placed on an external hard drive.  The only reason this data has not been returned to OT is because OT has not officially terminated Steve's consultancy position.

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

2

1    Furthermore, despite allegations in OT's Complaint and application for

2  emergency relief, there has never been a misappropriation of secrets by Steve or a

3  threat of dissemination of these secrets to anyone, including PatentRatings.  In fact,

4  Steve fully complied with the terms of his employment agreement by notifying OT

5  immediately upon being approached by PatentRatings.

6    Steve has now voluntarily agreed to return the OT data in his possession and

7  has agreed to refrain from any discussions with PatentRatings until he is served

8  with a subpoena.  As such, OT can no longer succeed on the merits of its claims

9  against Steve and there is no longer any threat of irreparable immediate harm, as

10  explained more fully below.  The Preliminary Injunction should not be granted.

## II. STATEMENT OF FACTS

### A. Steve's Employment Background at Ocean Tomo

In 2006 (and **not**, as OT makes it seem in its pleadings, in 2009), Steve was hired by OT as President of the Ocean Tomo Patent Ratings division ("OTPR"). As President of OT, Steve single-handedly grew OTPR into a profitable one via his leadership and marketing strategies.  In 2009, Steve entered into a revised employment agreement (the "Agreement") attached to Steve Lee's declaration as **Exhibit A**.  At that point, Steve's became Managing Director of OTPR.  At all times during Steve's employment at OTPR, a laptop computer was issued to Steve. Declaration of Steve Lee ("Steve Decl."), ¶2.

### B.  Resignation and Subsequent Consultancy

On or about September 16, 2011, Steve notified Jake Geleerd ("Geleerd"), President and Chief Operating Officer of Ocean Tomo, and Jim Malackowski ("Malackowski"), Founder and Chief Executive Officer of Ocean Tomo, that he wanted to resign from Ocean Tomo.  It was decided between Geleerd,

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

3

Malackowski and I that Steve's last day as an **employee** of Ocean Tomo would be September 30, 2011.  Steve Decl., ¶3.

However, both Malackowski and Geleerd asked Steve to stay on beyond September 30, 2011 as an independent consultant on a contractor basis so as to make Steve's departure from OT a smooth one for OT.  During subsequent conversations in late September 2011, Geleerd requested that Steve stay until the end of 2011.  Steve Decl., ¶4. Steve agreed to stay as a consultant until the end of 2011 or longer if necessary, but made it clear that he was not interested in returning to OT in a permanent capacity.  Steve did so because he built OTPR from the ground-up and he felt a certain personal responsibility to maintain good client relationships for OT, as well as to keep staff morale high, as he knew both were important for OT.  Steve Decl., ¶4.

As of October 1, 2011, Steve became a consultant for OT, with the goal of supporting the Orange County OTPR staff in technology and client follow-up matters.  Steve Decl., ¶5, Ex. B.  OT forwarded to Steve an Independent Contractor Agreement ("IC Agreement") executed by Ocean Tomo Human Resources director Mary Lou Chuinard ("Chuinard").  Steve Decl., ¶6, Ex. C.  Chuinard's execution date of the IC Agreement was October 1, 2011.   Steve did not sign the IC Agreement as he was not comfortable with certain provisions and wanted the jurisdiction governing the IC Agreement to be California.  Steve forwarded a modified draft IC Agreement to OT.  On November 9, 2011 (more than a month after he began acting as a consultant), Steve received a response to his modifications from Chuinard.  Steve Decl., ¶6, Ex.D., Ex. E.

Despite there being no signed IC Agreement between Steve and OT, Steve continued to provide consulting services to OT, including passing along a business opportunity for OT in December of 2011 to Roy D'Souza, Managing Director of

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

4

OT's Valuation Division and providing telephone support to OT staff **as recently as January of 2012**.   Steve Decl., ¶¶7-8, Ex. F, Ex. G.

### C.  The Laptop Computer and Ocean Tomo Data.

#### a.  The Hard Drive Crash

In the first week of October, 2011, after Steve began acting as a consultant for OT, he was asked by Chuinard to return the OT laptop that was previously issued to him.  However, Geleerd permitted Steve to keep the laptop as Steve needed it in order to perform his consultant work for OT.  Furthermore, as a former President and Managing Director of OT, Steve knew that was common practice to give OT contractors lap tops while they perform services for OT.  Steve Decl., ¶9.

In the second week of October, 2011, OT Human Resources directed the Orange County OTPR staff to ask Steve to return his laptop.  However, Steve was out of town at the time.  When the demand to return the laptop was communicated to Steve by the Orange County OTPR staff, it was sudden and he was not prepared for it.  He had used the laptop for years and it contained many files on it containing his personal confidential data, including but not limited to, phone numbers, addresses, passwords, credit card information, bank account information and his family's social security numbers.  There was no express prohibition on using the laptop for personal purposes at Ocean Tomo.  Steve Decl., ¶10.

Realizing that he had to return the laptop immediately, Steve decided to delete the personal private confidential data from the laptop.  Steve then moved all of his personal data into the "Trash Bin" on the laptop user interface.  However, Steve was, and is, aware that data from the "Trash Bin" can be retrieved with relative ease.  As such, he searched online and found free software that promised to make the contents of a computer's "Trash Bin" irretrievable in order to delete his personal private data in the "Trash Bin."  Steve downloaded the software and ran it

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

on the laptop.  Unfortunately, the software caused the laptop to crash and causing the operating system to become unstable.  Steve Decl., ¶11.

Steve wanted to reload the operating system and Microsoft Office onto the laptop and return it to Ocean Tomo in its original condition.  Steve took the laptop to a local computer store where he was told that it would take a half-day to reload the Windows operating system and Microsoft Office due to technician availability. Steve believed that, due to the crashing and system instability, the data on the hard drive was likely corrupted but the extent of the damage would not be known until a new operating system was installed.  Steve Decl., ¶12.

Steve was aware that Ocean Tomo wanted to give the laptop to an engineer in the Orange County office who needed a new laptop and decided to save everyone's time by instead installing a fresh hard drive into the laptop.  Steve I was informed by the store clerk that the new hard drive was pre-formatted and therefore needed only the standard company software to be installed on it.  Steve Decl., ¶13.

In his usual course of business at Ocean Tomo, Steve maintained backups of data from the laptop on an external hard drive as a safety precaution.  The previous backup took place at the end of September, 2011.  Steve purchased a new hard drive for the laptop and had the computer store's personnel install it on the laptop. Steve Decl., ¶14. Thereafter, from the external hard drive containing the backups of Ocean Tomo data from my laptop, Steve moved all OTPR documents onto two flash drives.  All of this was done for the benefit of Ocean Tomo, as Steve did not want to return a defective non-operating laptop to Ocean Tomo.  Steve Decl., ¶14.

On October 13, 2011, Steve returned the laptop with a new hard drive to OT.  Along with the drive, Steve returned the two flash drives containing the OT information to OT, with the flash drives taped to the laptop.  The flash drives contained all OTPR files ever created or used by Steve while an employee of OTPR from the fourth quarter of 2006 through the third quarter of 2011.  Steve

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

6

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

Decl., ¶15.  The contents of these flash drives were organized so that any new hire to be able to take over his position from day one.  All 6,875 files were organized into 17 folders covering various OTPR-related business areas, including but not limited to customer lists, business development, channels, operations, plans, legal files and competition data.  Steve Decl., ¶15.

### b.  The Ocean Tomo Data Back-Up.

As Steve continued consulting for OT after October 13, 2011, Steve retained the backup OTPR data on the external drive in case he needed to refer to it while rendering consulting services to OT.  At this time, Steve was moving between two homes, one in Tustin, California and a newly-purchased home in Apple Valley, California, approximately every other day.  Steve Decl., ¶16.  Because Steve did not want to carry an external hard drive with him on every trip and risk damaging the drive, on or about October 25, 2012, he made a second copy of the external hard drive.  One of the drives stayed in Tustin and the other was taken to Apple Valley along with many other things during move-in.  Steve had recently discovered that the external hard drive taken to Apple Valley is missing.  Despite a very diligent search, Steve has been unable to find the hard drive.  If the hard drive is found, Steve will immediately turn it over to Ocean Tomo as he has no need for it.  Steve Decl., ¶16.

Steve provided consulting services in October 2011 by going into Ocean Tomo's Orange County office several times in October of 2011 and answering employees' questions.  He continued providing consulting services in October, November and December 2011 and January 2012 by answering numerous questions by telephone.  While performing consulting services, he accessed Ocean Tomo data to answer Ocean Tomo's employees' questions.  Steve Decl., ¶17.

**OPPOSITION TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

Despite OT's knowledge on October 13, 2011 that the laptop was being returned with data on flash drives and not the laptop itself (and, despite the fact that OT apparently immediately commenced a forensic analysis of the laptop upon its return to Ocean Tomo), OT, through Chuinard, only asked about the laptop data **once**, on November 9, 2011. Steve responded on November 10, 2011. There were no further inquiries from OT about the data on the laptop until January 27, 2011, **after** Steve had given Ocean Tomo notice that PatentRatings was attempting to contact him. Steve Decl., ¶18, Ex. D, Ex. E.

## D. The January 24, 2012 E-Mail to Ocean Tomo Regarding PatentRatings.

On January 24, 2011, Steve received an e-mail from Jonathan Barney ("Jonathan"), a former executive at OT and the inventor of the PatentRatings analytical software, which is licensed to OT, and who is now embroiled in a law suit with OT. Steve Decl., ¶19, Ex. H. Jonathan informed Steve that OT and PatentRatings were now involved in an arbitration and that Jonathan wanted to speak to Steve about certain facts relating to the arbitration. Jonathan specifically stated that he would not ask about confidential information or information subject to the attorney-client privilege. Steve Decl., ¶19.

Steve realized that he was bound by the Agreement with OT regarding disclosure of confidential information and, as such, notified Ocean Tomo's counsel Joel Lutzker ("Lutzker") about the e-mail on January 24, 2011, informing him that PatentRatings wanted to talk to Steve about information relating to the arbitration. Steve informed Lutzker that he was providing notice under the Agreement and invited him to take necessary steps to protect the testimony. Steve also asked Lutzker to contact him if Lutzker had any questions. Steve Decl., ¶20, Ex. I.

8

1    Despite asking Lutzker to contact him if he had any questions, Steve

2  received no response from Lutzker or anyone else at Ocean Tomo until receiving

3  an e-mail from Carol DeFreitas, an attorney with Buchalter Nemer, apparently

4  retained by Ocean Tomo, on January 27, 2012.  Steve Decl., ¶21, Ex. J.  At the

5  time Ms. DeFreitas sent the e-mail, the Complaint in the instant matter was already

6  filed.  This was despite the fact that Steve was willing to refrain from speaking to

7  PatentRatings until a subpoena was served on him by PatentRatings and the fact

8  that no one contacted him prior to the filing of the Complaint.  Steve Decl., ¶21.

9

10    **E. Improper Service of the TRO Application and Order.**

11    On Wednesday, February 1, 2012, Steve received an e-mail from Ms.

12  DeFreitas containing the Temporary Restraining Order ("TRO") application.  The

13  e-mail stated that Steve was to "respond within 24 hours of service."  Steve Decl.,

14  ¶22, Ex. K. The notice in the application stated that Steve was to have 24 hours

15  after **personal** service to respond.  Steve Decl., ¶22, Ex. L.

16    Steve was not personally served with the Complaint and the ex-parte TRO

17  application until 5:45pm on Thursday, February 2, 2012.  Again, according to the

18  physical copy Temporary Restraining Order application, signed by Ms. DeFreitas

19  and personally served on Steve, Steve was to have 24 hours after **personal** service

20  to respond, which would make the response deadline Friday, February 3, 2012.

21  However, the Court's order was entered on the morning of Friday, February 3,

22  2012.  Steve Decl., ¶23.

23    It appears that the declaration filed with the Court in support of the TRO was

24  deliberately worded vaguely in order to make it appear to the Court that Steve had

25  been personally served with the TRO at the time of filing, when, in reality, he had

26  not been.

27

28

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

To date, Steve has not been served with the TRO order or the Order to Show Cause re: Preliminary Injunction.  Steve Decl., ¶23.

Steve has now provided all OT data in his possession to his attorneys at Lee Anav Chung LLP, who have forwarded it to OT's counsel.  Steve Decl., ¶¶24-25; Declaration of Harry Kim, ¶¶3-8; Declaration of Juan Galarza, ¶2.

## III.   LEGAL ARGUMENT

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Natural Resources Defense Council, Inc. (2008) 129 S.Ct. 365, 376; See Earth Island Institute v. Carlton (9th Circ. 2010) 626 F.3d 462, 469 (plaintiffs "face a difficult task in proving that they are entitled to this 'extraordinary remedy'").

An injunction is an equitable remedy and the basis for injunctive relief in the federal courts has always been 1) irreparable injury and 2) inadequacy of legal remedies.  Weinberger v. Romero-Barcelo (1982) 102 S.Ct. 1798, 1803.  "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.  Summers v. Earth Island Institute (2009) 129 S.Ct. 1142, 1149.

In addition to the general requirements for equitable relief listed above, under the "traditional test" a plaintiff seeking a preliminary injunction "must establish" 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm; 3) that the balance of equities tips sharply in his favor; and 4) that an injunction is in the public interest.  Winter v. Natural Resources Defense Council, supra, 129 S.Ct. 365 at 374.  Thus, an injunction is never to issue as a

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

OPPOSITION TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

matter of course and the court must balance these factors, and a judge is not mechanically obligated to grant an injunction for every violation of law.  <u>Amoco Production Co. v. Village of Gambell, Alaska</u> (1987) 107 S.Ct. 1396, 1402.

As explained more fully below, an injunction should not issue in the instant matter as the Plaintiff cannot fulfill the general requirements for equitable relief and the Plaintiff's request fails the traditional test.

## A. IN AN EFFORT TO SECURE A PRELIMINARY INJUNCTION FOR THE PURPOSE OF INTIMIDATION, PLAINTIFF HAS MISREPRESENTED FACTS TO THE COURT.

Both the Complaint and the TRO Application are full of misrepresentations and half-truths framed in a way to make it appear that Steve had maliciously withheld the laptop and data.

As an example, in its Complaint, Plaintiff mentions that Steve returned the laptop with no data and mentions that two flash drives were copied.  *See* <u>Complaint</u>, ¶¶4-5.  The Complaint also alleges that Steve destroyed all proprietary information. <u>Complaint</u>, ¶35.   However, nowhere does the Complaint mention that the flash drives **were returned** along with the laptop and that no data was actually destroyed.  This is clearly an effort to twist the facts and make it appear that Steve actually failed to return any OT data to OT when in fact all of the data was returned on two flash drives.

As another example, the Complaint alleges that Steve resigned from OT on September 16, 2011 and returned the laptop in November of 2011.  <u>Complaint</u>, ¶¶3-4.  Yet, the facts are clear: Steve returned the laptop on October 13, 2011 and, while he resigned on September 16, 2011, his last day as an employee was September 30, 2011.

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

The Complaint also alleges that Steve communicated his intent to disclose confidential information to Jonathan Barney. <u>Complaint</u>, ¶32. Yet the letter that contains the communication referred to clearly states that Steve does not intend to communicate confidential or privileged information to Jonathan Barney.

The TRO Application states that Jonathan Barney and PatentRatings made it clear that they would seek confidential and privileged information from Steve. <u>TRO Application</u>, p.2, Ln.15-18. Yet, Jonathan Barney's letter, attached to Steve's declaration, clearly states that no such information was going to be sought.

Paragraph 72 of the complaint alleges that Steve destroyed data four months after his resignation on September 16, 2011. Yet, the laptop was returned on October 13, 2011. This is clearly a deliberate attempt to mislead the Court.

**<u>Perhaps the most egregious misrepresentation of all</u>** is the utter failure of OT to disclose 1) Steve's actual last date as an employee **<u>and</u>** 2) Steve's ongoing independent contractor relationship. The Complaint states that Steve resigned on September 16, 2011 but **<u>utterly fails to mention</u>** that his last day as an employee was September 30, 2011. The TRO Application states (incorrectly) that Steve resigned on September 12, 2011 but again fails to mention his last day as an employee. <u>TRO Application</u>, p.1, Ln.9. This is clearly a deliberate attempt to make the time frame between Steve's last day and the day the laptop was returned longer than what it really was and create an air of purported sinister action by Steve.

Although Plaintiffs go to great effort to detail Steve's recent employment history with OT, neither the TRO Application or the Complaint make **<u>ANY</u>** mention of the fact that Steve was retained as a consultant after resigning as Managing Director. This is a crucial fact that, if revealed, would be fatal to Plaintiff's case. The failure to reveal this fact to the Court in seeking a TRO was misrepresentation of the worst kind.

**OPPOSITION TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

## B. PLAINTIFF CANNOT FULFILL THE GENERAL REQUIREMENTS FOR EQUITABLE RELIEF.

### i.   There is No Threat of Harm to Plaintiff

As explained above, to fulfill the equitable relief requirements, Plaintiff must show that there is a high likelihood of a concrete injury from a particular threat which will lead to irreparable injury.  Plaintiff must also demonstrate "immediate threatened harm." Carribean Marine Services Co., Inc. v. Baldridge (9th Cir. 1988) 844 F.2d 668, 674.  Part harms and past wrongs are insufficient and do not present a case or controversy regarding injunctive relief. City of Los Angeles v. Lyons (1983) 461 U.S. 95, 102.

Speculative injury does not constitute irreparable injury sufficient to warrant granting of a preliminary injunction. Goldie's Bookstore, Inc. v. Superior Court (9th Cir. 1984) 739 F.2d 466, 472.  A plaintiff must thus do more than merely allege imminent hard, but must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief. Los Angeles Memorial Coliseum Commission v. National Football League (9th Cir. 1980) 634 F.2d 1197, 1201.

Plaintiff cannot show a likelihood of concrete injury from Steve as Steve is not a credible threat.  Steve has promised, under penalty of perjury, to not have any discussions relating to OT with PatentRatings until a valid subpoena is served on him and has returned all of OT's data in his possession. Steve Decl., ¶¶24-25. Steve has not shared, nor has ever threatened to share, confidential or attorney-client privileged information with PatentRatings or other parties. Steve Decl., ¶24. Plaintiff has provided no evidence to the contrary and Steve's own e-mail shows that he never intended to share confidential or privileged information.

Thus, there can be no concrete injury and no immediate threatened harm. Plaintiff thus cannot fulfill the general requirement for equitable relief.

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

ii.     **Plaintiff Unreasonably Delayed the Bringing of This Request for a Preliminary Injunction and Is Bringing This Request for an Improper Purpose.**

Unexplained delay in seeking preliminary injunctive relief may undercut a plaintiff's claim that it is threatened with irreparable injury.  <u>Miller v. California Pac. Med. Ctr.</u> (9th Cir. 1993) 991 F.2d 536, 544.  In fact, in the United States District Court for the Eastern District of California, Local Rule 65-231(b) states as follows:

> "In  considering  a motion for a temporary  restraining order, the Court will consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order.  **Should the Court find that the applicant unduly delayed in seeking  injunctive  relief, the Court  may conclude that the delay constitutes laches or contradicts the applicant's allegations of irreparable injury and may deny the motion solely on either ground**."  ED CA Local Rule 65-231(b) (Emphasis added).

While the Eastern District rule is not binding on the Central District, it underscores the importance the factor of unreasonable delay has in the determination of whether a preliminary injunction is necessary.  In the instant matter, OT was aware as of October 13, 2011 of the fact that Steve returned a laptop with a replaced hard drive and that the OT data was returned on flash drives.  On November 9, 2010, Chuinard asked Steve about the laptop data.  Steve responded to Chuinard on November 10, 2011.

The true purpose of this application is clear; OT simply seeks to intimidate Steve and to interfere with the ongoing arbitration in the PatentRatings matter.  It is no coincidence that OT failed to take any action for months and that no more was

14

heard from OT about the laptop or the data until OT discovered that Steve was approached to be a witness at the PatentRatings arbitration.  It is thus clear that there is no irreparable harm.  Instead, OT is using the issues involving the laptop and data to intimidate Steve and to prevent him from testifying.

## C. PLAINTIFF'S REQUEST FAILS THE GENERAL TEST FOR INJUNCTIVE RELIEF

### i. Plaintiff Cannot Succeed on the Merits of Its Action Against Defendant Steve Lee.

Regardless of what test or formulation is applied, to obtain a preliminary injunction, the Plaintiff must show that it is "likely" to prevail on the merits. Winter v. Natural Resources Defense Council, s*upra*, 129 S.Ct. 365 at 374; *see also* Ross-Simmons of Warwick, Inc. v. Baccarat, Inc. (1st Cir. 1996) 102 F.3d 12, 16 ("likelihood of success" is the "main bearing wall" of the traditional test). Plaintiff cannot succeed on the merits of any of its causes of action.

#### 1. Plaintiff Cannot Succeed on Its Misappropriation of Trade Secrets Claim.

##### a. Plaintiff Has Not Identified the Trade Secrets at Issue with Particularity.

Under California law, for a successful misappropriation claim, the plaintiff must show: 1) that Plaintiff invested substantial time and money in developing of the trade secret; 2) that Defendant appropriated the property at little or no cost; and 3) that Plaintiff has been injured by this conduct.  Capitol Records, LLC v. BlueBeat, Inc. (2010) 765 F.Supp.2d 1198.

It is critical to any Uniform Trade Secrets Act (USTA) claim that the information claimed to have been misappropriated be clearly identified.  Silvaco

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

<u>Data Systems v. Intel Corp.</u> (2010) 109 Cal.Rptr.3d 2.  This requirement applies to plaintiffs who assert a claim for breach of non-disclosure agreements styled as a misappropriation under the UTSA.  <u>Neothermia Corp. v. Rubicor Medical, Inc.</u> (2004) 345 F.Supp.2d 1042.  A vague claim that an employee misappropriated business models and implementations is **insufficient** to describe a trade secret with particularity.  <u>Mattel, Inc. v. MGA Entertainment, Inc.</u> (2011) 782 F.Supp.2d 911 (emphasis added).  Neither is a simple description of a kind of technology without more particularity.  <u>Id.</u>

Here, Plaintiff's definition of its "trade secrets" is incredibly broad and no trade secrets are identified with particularity.

### b.  No Misappropriation Has Occurred.

Putting aside the technical deficiencies of Plaintiff's complaint, Plaintiff cannot succeed on this claim because no misappropriation has occurred. "Misappropriation is defined as follows in the <u>California Civil Code:</u>

"(b) "Misappropriation" means:
  (1) Acquisition of a trade secret of another by a person who knows
       or has reason to know that the trade secret was acquired by improper
       means; or
  (2) Disclosure or use of a trade secret of another without express
       or implied consent by a person who:
    (A) Used improper means to acquire knowledge of the trade secret;
         or
    (B) At the time of disclosure or use, knew or had reason to know
         that his or her knowledge of the trade secret was:
      (i)   Derived from or through a person who had utilized improper
             means to acquire it;
      (ii)  Acquired under circumstances giving rise to a duty to
             maintain its secrecy or limit its use; or
      (iii) Derived from or through a person who owed a duty to the
             person seeking relief to maintain its secrecy or limit its use; or
    (C) Before a material change of his or her position, knew or had

16

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake."

California Civil Code §3426.1(b).

In order to succeed on a claim of misappropriation of a trade secret under California Civil Code §3426 *et seq.*, one must show that the information was misappropriated to <u>attain an unfair competitive advantage</u>. <u>Cal.Civ.Code</u> §3426.1(b). One cannot be liable for misappropriation where one is aware of a trade secret but does not actually misappropriate it. <u>Borland, Inc. v. Rolf  C. Hagen (USA) Corp.</u> (2010) 685 F.Supp.2d 1094 (manufacturer of pet supply products not liable for misappropriation when it was aware of distributor's list of retailers but did not use that information when it offered to sell directly to all retailers carrying its products). Furthermore, a person is liable for misappropriation of trade secrets **<u>only if</u>** the person knows or has reason to know that he is not in rightful possession of the information. <u>Cypress Semiconductor Corp. v. Superior Court</u> (2008) 163 Cal.App.4[th] 575.

In the instant matter, it is clear that no misappropriation for an unfair competitive advantage has taken place. Plaintiff has not been able to show any unfair competitive advantage and Steve's declaration, as well as the facts and evidence supporting it, clearly show that Steve retained the copied OT data solely for the purpose of assisting the OT staff in his capacity as an independent contractor. Steve did not use improper means to acquire the data, having received it as an employee of OT and having used it for the benefit of OT as an independent contractor, did not disclose or distribute the data and had no intent to disclose or distribute the data. As such, Plaintiff cannot succeed on the merits of its misappropriation of trade secrets cause of action.

//

//

**OPPOSITION TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

**2.  Plaintiff Cannot Succeed On Its Breach of Contract Claim.**

Plaintiff cites <u>Reichert v. General Ins. Co.</u> for the proposition that the elements of a breach of contract include: 1) the existence of a contract; 2) a plaintiff's performance or excuse for non-performance; 3) defendant's breach and 4) resulting damage.  <u>Reichert v. General Ins. Co.</u>, (1968) 68 Cal.2d 822, 830. Plaintiff claims that the Agreement required Steve to return and account for all OT equipment and confidential information and to safeguard that information.

However, there has been no breach of the Agreement and certainly no damages to Plaintiff.  The only reason for the return of the data on flash drives instead of on the laptop itself was that the hard drive containing the data had crashed.  Steve did not turn over a laptop with a cleanly-wiped blank slate.  In fact, Steve's November 10, 2011 e-mail to Chuinard regarding the data loss explains this and states that, once the information on the flash drives (which Steve took care to categorize for a newly hired employee) is loaded onto the laptop, the laptop will be ready for OT operation.

Steve only retained the data because he continued to work with OT on an independent contractor basis.  OT was aware that the laptop was returned with a new hard drive and was aware, based on forensic analysis, that the data was copied.  As Steve, for all practical purposes, continues to be an independent contractor and consultant for OT, he rightfully had access to the data to perform the functions of a consultant.  Despite this, no action was taken by OT until it became necessary to intimidate him to prevent him from testifying in the PatentRatings matter.

Furthermore, as Steve has explained, the data has only been used to **benefit** and not damage OT, as Steve has continued to assist OT staff and has provided new business opportunities to OT.  Steve did not use the data for his benefit, did

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

**OPPOSITION TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

1    not misappropriate the data and thus did not breach the Agreement or cause

2    damage of any kind to OT.  OT will not be able to succeed on this cause of action.

3

4            **3.  Plaintiff Cannot Succeed on Its Cause of Action for**

5                **Violation of California Penal Code Section 502.**

6            Plaintiff has alleged that Steve violated California Penal Code Section 502

7    by "[i]mproperly accessing and gaining entry without authorization to Ocean

8    Tomo's computer and network," by "[k]nowingly accessing Ocean Tomo's

9    computer and without permission altering, damaging, deleting, destroying and

10   otherwise making use of data to wrongfully obtain money, property and data,"

11   "[k]nowingly and without permission accessing Ocean Tomo data and cop[ying],

12   [taking, deleting and making] use of data," and by "[k]nowingly and without

13   permission" providing a means to access Ocean Tomo's computers, servers,

14   networks and computer systems.  Plaintiff's Complaint, 13:1-14:4.

15           Firstly, although Plaintiff has made allegations of accessing computer

16   network systems, it has put forth no evidence to prove this.  The only evidence

17   Plaintiff has put forth is that a laptop was returned to it with a replaced hard drive.

18   Strangely, despite clear evidence to the contrary, Plaintiff makes no mention in the

19   Complaint of the **two flash drives** that were included along with the returned

20   laptop, which contained the data lost as the result of a crash, which itself resulted

21   out of an attempt to delete personal data.  Plaintiff has put forth no evidence that

22   the data was accessed and used for monetary gains or that Plaintiff has provided

23   access to computers servers and networks to others, as alleged in the Complaint.

24   This evidence is missing for one reason: it does not exist and these actions did not

25   occur.  Pleading the truth would have been fatal to Plaintiff's complaint, thus

26   leading to the omission of clearly relevant facts.

27

28
                                       19

Furthermore, one can only be liable for violation of California Penal Code 502 if one's actions were done "without permission." Steve was retained as a consultant for OT and, as such, necessarily had to access the OT data to provide services to OT. As such, he copied the data for his use as a consultant.

In addition, the data was not deleted "knowingly" but was destroyed in the process of deleting Steve's personal data in preparation for the return of the laptop to OT. Instead of "altering, damaging, deleting, destroying" or improperly using the data, Steve, who had, in the usual course of his activities, kept a back-up of the data, provided that data to OT on flash drives. In effect, OT's basis for this cause of action is a simple hardware failure which was remedied by a prudent back-up. In light of the evidence put forth, Plaintiff will be unable to succeed on this cause of action.

### 4. Plaintiff Cannot Succeed on Its Unfair Competition Cause of Action.

Plaintiff claims that Steve's acts are violations of California's Unfair Competition Laws, codified as California Business and Professions Code Section 17200 *et seq*. Plaintiff's claims are based on allegations of misappropriations of trade secrets and confidential information for a financial benefit. However, as explained above, in an attempt at intimidating Steve, Plaintiff has distorted the facts alleged in its complaint. Plaintiff has failed to produce even a scintilla of evidence that Steve has misappropriated trade secrets under the definition of misappropriation or has communicated confidential information for a financial benefit or otherwise. Instead, Plaintiff has picked and chosen facts carefully to present a scenario of possible misdeeds to an outsider or the Court, carefully avoiding such facts as Steve's true last date as an employee of OT and Steve's **ongoing** status as an independent contractor for OT.

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

20

Steve's actions speak clearly and override any invented and mischaracterized allegations by Plaintiff.  When asked by Jonathan to talk about the PatentRatings litigation, Steve **did not** acquiesce and speak to Jonathan.  Instead, Steve contacted OT and informed them of Jonathan's request.  Without attempting to instruct Steve as to how to proceed, Plaintiff filed a lawsuit against Steve (filled with misrepresentations and half-truths) in an attempt to scare him into refusing to testify.

No evidence has been put forth of misappropriation of trade secrets.  Steve has not divulged any of the information in his possession and has returned all OT data to OT.  Plaintiff will simply not be able to succeed on this cause of action.

### 5.  Plaintiff Cannot Succeed on Its Cause of Action for Violation of 18 U.S.C. §1030.

Plaintiff claims that Steve's acts are violations of the Computer Fraud and Abuse Act (CFAA), specifically 18 USC §§ 1030(a) (2)(c), (a)(4), and (a)(5)(A).  To be liable under these sections, the access to be the computer must be "without authorization or [exceeding] authorized access."  As mentioned above, Steve was originally in possession of the data as President and Managing Director.  He was retained as a consultant for OT and, as such, necessarily was authorized to access the OT data to provide services to OT used the data as data in his consulting capacity for the benefit of OT.

Furthermore, as employee and consultant to OT, Steve enjoyed unrestricted access to the laptop OT provided him, without any imposed restrictions.   Such access is fatal to a cause of action under 18 U.S.C. §1030.  *See* Clarity Services, Inc. v. Barney, (M.D. Fla. 2010) 689 F.Supp.2d 1309 (finding that a former employee who accessed their own laptop, booted it and restored its factory settings after resignation did not access the computer without authorization); *see also*

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

**OPPOSITION TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

<u>Penrose Computer Marketgroup, Inc. v. Camin</u> (N.D.N.Y.  2010) 682 F.Supp.2d 202 (finding that employee's act of deleting workplace e-mail history and client contact did not violate the Stored Communications Act where it was undisputed that the employee had authorization to access and control his e-mail account);

In addition, the data was not deleted "intentionally" or "knowingly with intent to defraud" but was accidentally destroyed in the process of deleting Steve's personal data in preparation for the return of the laptop to OT.   A backup of the data was provided to OT so that the laptop could be brought back to its original settings.  Based on these facts, Plaintiff will be unable to succeed on this cause of action.

### ii.    Plaintiff Cannot Put Forth a Showing of Irreparable Harm.

Plaintiff claims that it will be irreparably harmed if the injunction is not granted because Steve will disclose confidential and attorney-client privileged information to OT's adversaries and third parties.  <u>TRO Application</u>, 18:3-18:14.

Steve, however, has stated, under penalty of perjury, that he will not communicate with OT's adversary (PatentRatings) until he is served with a subpoena.   Furthermore, Steve has turned over all of OT data in his possession.

As explained above, an injunction should only be granted if a threat is concrete, particularized, actual, imminent and not conjectural or hypothetical. <u>Summers v. Earth Island Institute</u> (2009) 129 S.Ct. 1142, 1149.  Here, if Steve was ever a threat (and he **<u>was not</u>**, as his first action upon receiving the e-mail from Jonathan was to contact OT, and not to disclose information to Jonathan), that threat has now been "neutralized" as Steve will not be speaking to PatentRatings and has turned over all data in his possession.

Furthermore, OT is suing PatentRatings for $2,500,000.  If (and this is purely conjecture, as this will not happen) Steve were to disclose information to

PatentRatings that would result in a loss for OT, OT would simply be able to sue Steve for that loss.  As such, money damages, and not injunctive relief, would be appropriate in such a situation.

Plaintiff cannot make a showing of irreparable harm and the injunction must thus not issue.

### iii. The Balance of Equities Tips <u>SHARPLY</u> in Favor of Defendant Steve Lee.

As explained above, a preliminary injunction is an equitable remedy.  The maxim of "He who comes into Equity must come with clean hands" is well known.  <u>Blair v. Doctor's Co.</u> (1990) 222 Cal.App.3d 1048, 1059.  The doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy, or relief will be denied regardless of the merits of his claim.  <u>Precision Co. v. Automotive Co.</u> (1945) 324 U.S. 806, 814-815.  The determination of whether a plaintiff has unclean hands "is as relevant to preliminary relief as to final relief."  <u>Original Great American Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.</u> (7th Cir. 1992) 970 F.2d 273, 281; *see also* <u>GoTo.com, Inc. v. Walt Disney Co.</u> (9th Cir. 2000) 202 F.3d, 1209-1210 (considering an unclean hands defense in injunctive relief matter).

Steve has agreed to turn over all OT data and has agreed not to discuss anything with PatentRatings until he is subpoenaed for testimony.  Any injunction issued in Plaintiff's favor will have no teeth, as there is nothing left to enjoin.  Instead, it will act as a symbol of OT's domination and power over Steve, which will dovetail perfectly with OT's campaign of intimidation against Steve.

OT may argue that, notwithstanding that Steve has agreed to turn over the OT data and has agreed not to speak with PatentRatings, Steve is a "loose cannon" and may disclose OT secrets to third parties.  Granting the injunction in such an

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

**OPPOSITION TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

instance would set a dangerous precedent, as it would allow a former employer to, without a shred of evidence, enjoin a former employee without any provocation or overt act by that employee in the fear that the employee will disclose information to a third-party in the future.

### iv. The Injunction Being Sought by Plaintiff is Not in the Public Interest.

Plaintiff claims the injunction will be in the public interest because it will protect the principles of attorney-client privilege and employee property rights. TRO Application, 19:3-19:17. However, this injunctive relief, as requested by Plaintiff, is narrow, enjoining only Steve. Where an injunction's reach is narrow and affects only the parties with no impact on non-parties, "the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction." Stromans, Inc. v. Selecky (9th Cir. 2009) 586 F.3d 1109, 1139.

When looked at the entire matter broadly, however, it is clear that public interest, if it is to be considered, tips sharply in favor of Steve. The public has an interest in a legal system accessible to all, without witness intimidation. Plaintiff's injunction, and, indeed, this entire action, is nothing more than an attempt to instill fear into Steve and to prevent him from testifying in the PatentRatings matter. The Court should not permit Plaintiff to stifle the litigation process and to silence a witness through bad-faith litigation.

### D. INJUNCTIONS OF THE TYPE SOUGHT BY PLAINTIFF ARE DISFAVORED BY THE COURTS.

Injunctions that provide substantially all of the relief the movant would obtain after a full trial on the merits are disfavored by the Courts. Schrier v.

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

University of Colorado (10th Cir. 2005) 427 F.3d 1253, 1260-1261.  Furthermore, such injunctions are given much greater scrutiny on appeal.  "When a district court's order, albeit in the form of a TRO or preliminary injunction, will finally dispose of the matter in dispute, it is not sufficient for the order to be based on a likelihood of success or balance of hardships… **the district court's decision must be correct** (insofar as possible on what may be an incomplete record)." Romer v. Green Point Sav. Bank (2nd Cir. 1994) 27 F.3d 12, 16.

Furthermore, injunctions as to acts that are not subject to objective verification (such as enjoining codefendants in an unfair competition case from passing information to each other about a plaintiff's business) are looked upon with suspicion.  See Readylink Healthcare v. Cotton (2005) 126 Cal.App.4th 1006, 1023 (injunction prohibiting former employee from soliciting anyone "associated with" or "in a business relationship with" former employer was "vague, ambitious and overbroad").

In the instant matter, if Plaintiff's request for a preliminary injunction is granted, substantially all of the relief Plaintiff is seeking will be provided to Plaintiff as Plaintiff's Complaint, aside from seeking nominal damages, seeks to simply enjoin Steve's activities.  Furthermore, this injunction prevents Steve from talking to PatentRatings or third-parties and, as such, is not subject to objective verification.  As such, this injunction is of the type disfavored and the Court's decision must be correct, as based on the evidence before it.

## E.  THE INJUNCTION, AS SOUGHT BY THE PLAINTIFF, IS EXTREMELY BROAD AND VAGUE.

Because of the serious view courts have traditionally taken of the violation of injunctive orders and because of the severity of punishment which may be imposed for such violations, the orders must be specific and reasonably detailed.

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

LEE ANAV CHUNG LLP
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

1  Pasadena City Bd. of Ed. v. Spangler  (1976) 427 U.S. 424.  Basic fairness requires

2  that persons enjoined receive explicit notice of precisely what conduct is outlawed.

3  Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers

4  Local No. 70 of Alameda County (1974) 415 U.S. 423.

5      In the instant matter, Plaintiff's injunction is not at all specific and

6  impermissibly vague.  It seeks to enjoin Steve from speaking to PatentRatings

7  about **ANYTHING** and is not limited to confidential information.  In effect, Steve

8  (not that he would) cannot even discuss the weather with PatentRatings.

9  Furthermore, the definition of trade secrets in the Complaint and Application is

10  impermissibly broad and impossible to comply with.

11

12      **F.  IN THE UNLIKELY EVENT THE INJUNCTION IS**

13      **GRANTED, PLAINTIFF MUST POST A BOND.**

14      Although the Court has power to excuse a bond in "exceptional" cases, these

15  are few and far between.  "The instances in which a bond may not be required are

16  so rare that the requirement is almost mandatory."  Frank's GMC Truck Center,

17  Inc. v. General Motors Corp. (3rd Cir. 1988) 847 F.2d 100, 103.  Failure to require

18  a bond upon issuing a preliminary injunction is reversible error. *See* Hoechst

19  Diafoil Co. v. Nan Ya Plastics Corp. (4th Cir. 1999) 174 F.3d 411, 421 (failure to

20  require bond upon issuing preliminary injunction is reversible error).

21

22      **IV.   CONCLUSION**

23      Based on the above, is it clear that Plaintiff Ocean Tomo, LLC has filed the

24  Complaint and has sought this Preliminary Injunction in bad faith to stifle the

25  litigation process and intimidate Defendant Steve Lee.  Defendant Steve Lee thus

26  respectfully requests that the Court deny Plaintiff Ocean Tomo, LLC's Application

27

28

26

for a Preliminary Injunction and further sanction Plaintiff Ocean Tomo, LLC and its attorneys Buchalter Nemer pursuant to FRCP 11(b).

Dated:  February 10, 2012                          LEE ANAV CHUNG LLP


                                                              /s/

                                        By:_____
                                                Jay J. Chung
                                                V. Alan Arshansky
                                        Attorneys for Defendant STEVE LEE

**LEE ANAV CHUNG LLP**
520 S. Grand Ave., Suite 1070
Los Angeles, CA 90071
Phone: (213) 341-1602 | Fax: (213) 947-4201

27

| | |
|---|---|
| 1 | **PROOF OF SERVICE** |
| 2 | I am over the age of 18 and am not a party to this action or cause. I am a resident |
| 3 | of or employed in the County of Los Angeles. My residence or business address is 520 S. Grand Avenue Suite 1070, Los Angeles, CA 90071. |
| 4 | On _____ February 10, 2012 _____, I served a copy of the following documents: |
| 5 | |
| 6 | **DEFENDANT STEVE LEE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** |
| 7 | |
| 8 | by enclosing them in an envelope and |
| 9 | ( ) [U.S. MAIL] depositing the sealed envelope with the United States Postal Service, with the postage fully prepaid on the date and at the city |
| 10 | and state shown below, or |
| 11 | ( ) placing the sealed envelope for collection and mailing on the date and at the place shown below, following our ordinary business practices. I am |
| 12 | readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that |
| 13 | correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in |
| 14 | a sealed envelope with postage fully prepaid, or |
| | ( ) [EXPRESS SERVICE CARRIER] depositing the sealed envelope in a box, substation, or other facility regularly maintained by ( ) FEDERAL |
| 15 | EXPRESS, ( ) UPS, ( ) DHL, an express service carrier, or delivering to a courier or driver authorized by said express service carrier to |
| 16 | receive documents, |
| 17 | ( ) [FACSIMILE] or by transmitting the aforementioned documents via facsimile from a facsimile transmission device at phone number, with |
| 18 | an unsigned copy of this declaration, to the recipient(s) set forth below at the phone numbers noted therein. The foregoing facsimile |
| 19 | transmission was reported as complete without error by a transmission report issued by the device upon which the said transmission was made |
| 20 | immediately following the transmission. A true and correct copy of the said transmission report is attached hereto. |
| | ( X ) [PERSONAL SERVICE] causing such envelope to be delivered by |
| 21 | hand to the agent for service of process. |
| 22 | The foregoing envelope was addressed and mailed to the address(es) below, or delivered by hand at the address(es) below if personally served, or the documents |
| 23 | were transmitted via facsimile machine to: |
| 24 | Peter D. Holbrook |
| | Carol Dwyer DeFreitas |
| 25 | BUCHALTER NEMER |
| | 18400 Von Karman |
| 26 | Avenue, Suite 800 |
| | Irvine, CA 92612-0514 |
| 27 | ( X ) Federal    I declare under penalty of perjury under the laws of the United |
| | States and the State of California that the above is true and |
| 28 | correct. |

1

Executed on   February 10, 2012, in the City of Los Angeles, California.

2

Serena Wu
Name (Print)                                    Sign

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**PROOF OF SERVICE**