1  BUCHALTER NEMER
   A Professional Corporation
2  PETER D. HOLBROOK (SBN: 105845)
   CAROL DWYER DEFREITAS (SBN: 239769)
3  18400 Von Karman Avenue, Suite 800
   Irvine, CA 92612-0514
4  Telephone: (949) 760-1121
   Facsimile: (949) 720-0182
5  Email: pholbrook@buchalter.com
   Email: cdefreitas@buchalter.com
6

7  Attorneys for Plaintiff
   OCEAN TOMO, LLC, an Illinois Limited Liability
8  Company

9
                     **UNITED STATES DISTRICT COURT**
10
                     **CENTRAL DISTRICT OF CALIFORNIA**
11

12

| OCEAN TOMO, LLC, an Illinois Limited Liability Company, | Case No. SACV12-146JVS(MLGx) Honorable: James V. Selna |
|---|---|
| Plaintiff, | **REPLY TO LEE'S OPPOSITION TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION TO ENJOIN AND RESTRAIN DEFENDANT** |
| vs. | |
| STEVE LEE, an individual | |
| Defendant. | Date:  February 17, 2012<br>Time:  1:30 p.m.<br>Dept:  10C |

BN 10997660v2

NOTICE OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER

# TABLE OF CONTENTS

**Page**

I. Introduction ..........................................................................................................1

II. Factual Summary..................................................................................................2

    A. Spoliation Of Evidence After Notice Of The Tro In February 2012.....2

        1. Spoliation Of Evidence On February 6, 2012 ............................2
        2. Delayed Return Of The Seagate Hard Drive And The Thumb Drive ...............................................................................3
        3. Spoliation Of Evidence On February 9, 2012 ............................3

    B. Lee Was Not A Consultant After His Resignation And He Was Not Permitted To Keep The Laptop................................................................4

    C. Destruction Of Data On The Laptop In October 2011 ..........................6

    D. Service Of The Tro And Osc On Lee .....................................................7

III. Ocean Tomo Has A Very High Probability Of Succeeding On The Merits Of Its Claims..............................................................................................................7

    A. Ocean Tomo Should Prevail On Its Claims As A Result Of Lee's Spoliation Of Evidence ...........................................................................8

    B. Misappropriation Of Trade Secrets........................................................9

        1. Ocean Tomo Has Protectable Trade Secrets And Confidential Information. .................................................................................9
        2. Lee Has Misappropriated Trade Secrets And Has Threatened Further Misappropriation.........................................................11

    C. Ocean Tomo Has High Probability Of Success On The Merits Of Its Claims For Breach Of Contract, Violation Of Penal Code Section 502, The Computer Fraud Abuse Act, And Unfair Competition . ...............11

IV. Ocean Tomo Did Not Unreasonably Delay In Seeking Injunctive Relief.....12

V. Ocean Tomo Will Suffer Irreparable Harm Without An Injunction..............13

VI. The Balance Of Equities And The Public Interest Strongly Favors The Issuance Of An Injunction..................................................................................14

VII. Conclusion..........................................................................................................14

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aero Products Intern, Inc. v. Intex Recreation Corp.*,
  2004 WL 417193 (N.D. Ill. 2004) ........................................................................ 9

*Barsoum v. NYC Housing Authority*,
  202 F.R.D. 396, 50 Fed. R. Serv. 3d 26 (S.D.N.Y. 2001) ..................................... 8

*Collazo-Santiago v. Toyota Motor Corp.*,
  149 F.3d 23, Prod. Liab. Rep. (CCH) P 15280 (1st Cir. 1998) ............................. 8

*Continental Car-Na-Var Corp. v. Moseley*,
  24 Cal. 2d 104 (1944) ......................................................................................... 14

*Fujitsu Ltd. v. Federal Exp. Corp.*,
  247 F.3d 423 (2d Cir. 2001) .................................................................................. 8

*Linnen v. A.H. Robins Co., Inc.*,
  10 Mass. L. Rptr. 189, 1999 WL 462015 (Mass. Super. Ct. 1999) ...................... 9

*Moroccanoil, Inc. v. Moroccan Gold, LLC*,
  590 F. Supp. 2d 1271 (C.D. Cal. 2008) .............................................................. 14

*Neothermia Corp. v. Rubicor Medical, Inc.*,
  345 F. Supp. 2d 1042 (N.D. Cal. 2004) .............................................................. 10

*Payne v. Exxon Corp.*,
  121 F.3d 503 (9th Cir. 1997) ................................................................................. 9

*Silvestri v. General Motors Corp.*,
  271 F.3d 583, 51 Fed. R. Serv. 3d 694 (4th Cir. 2001) ........................................ 8

*Team Gordon, Inc. v. Specialized Bicycle Components, Inc.*,
  2010 U.S. Dist. LEXIS 130738 (C.D. Cal. Nov. 18, 2010) ................................ 13

*Troup v. Tri-County Confinement Systems, Inc.*,
  708 A.2d 825, Prod. Liab. Rep. (CCH) P 15251 (Pa. Super. Ct. 1998) ............... 8

*U.S. v. Phillip Morris USA, Inc.*,
  327 F.Supp.2d 21 (D.D.C. 2004) .......................................................................... 9

*Zubulake v. UBS Warburg LLC*,
  220 F.R.D. 212 (S.D.N.Y. 2003) .......................................................................... 8

## I. INTRODUCTION

Defendant Steve Lee has demonstrated a disturbing pattern of disregard of Ocean Tomo LLC's ("Ocean Tomo") rights, most recently shown by the destruction of data and spoliation of evidence that took place **after the Court entered the Temporary Restraining Order,** which required Lee to "immediately deliver within 48 hours to Ocean Tomo all data, information, files taken and copied from the laptop computer and hard drive provided during your employment at Ocean Tomo." Lee and his counsel were admittedly on notice of the Temporary Restraining Order ("TRO") and Order to Show Cause ("OSC"), yet chose to subsequently delete data and critical forensic evidence at issue on February 6, 2012 and February 9, 2012.

In his Opposition to the OSC, Lee claims that on February 6, 2012, he delivered an external hard drive (the "Seagate Hard Drive") to his counsel containing Ocean Tomo data and instructed them to delete "personal" data. A forensic inspection of the Seagate Hard Drive shows that about 49,000 files and folders were wiped from the device on February 6, 2012. Lee further admits that on February 9, 2012, a folder on the Seagate Hard Drive called "1 Steve's back up" with 19.4 gigabytes of data was deleted. The deletion of files on the Seagate Hard Drive was an egregious violation of the TRO.

However, what is more disturbing is that a forensic examination of the Seagate Hard Drive revealed that not only was the "1 Steve's back up" folder deleted, but 97% of the hard drive was deleted, including <u>all unallocated space on the hard drive containing critical metadata showing evidence of file use and file accessing was wiped clean</u>. Now that this metadata has been wiped clean, critical evidence on the Seagate Hard Drive has been spoiled. Any data showing when Lee accessed files, what files he accessed, when he accessed them, is gone. Lee's destruction of critical evidence in this case has the potential to cause such devastating ramifications on how Ocean Tomo can proceed that terminating

1  sanctions against Lee should be considered by the court at the appropriate time. For
2  now, it is clear that Lee poses a serious threat and cannot be trusted even when
3  faced with a TRO.

4      Furthermore, in an attempt to distract the Court from his own misconduct,
5  Lee erroneously claims that Ocean Tomo has misrepresented facts concerning
6  Lee's employment. First, Lee was not a "consultant" of Ocean Tomo. Second, Lee
7  was not permitted to keep the Laptop after his employment ended. Indeed, Lee's
8  own Declarations and exhibits show that Ocean Tomo did not give him permission
9  to keep the laptop or any data thereon, complained and demanded return of the
10 laptop on numerous occasions, and did not consider him to be an independent
11 contractor following his resignation.

12     Lee has demonstrated that he poses an even greater threat to Ocean Tomo
13 now than he did prior to the entry of the TRO and the Court should immediately
14 issue a Preliminary Injunction prohibiting the disclosure, use or possession of any
15 Ocean Tomo data and further ordering the immediate turn-over of all computers to
16 which the Seagate Device was installed prior to February 6, 2012 for forensic
17 examination.

## II.   FACTUAL SUMMARY

### A.   Spoliation of Evidence After Notice of the TRO in February 2012

#### 1.   Spoliation of Evidence on February 6, 2012

21     On February 6, 2012, Lee was on notice that the Court issued the TRO and
22 had received the TRO and OSC to his personal email address. (Declaration of
23 Carol DeFreitas at ¶2, Exh. 1). Also, on February 6, 2012, Lee delivered the
24 Seagate Hard Drive to his counsel, which contained Ocean Tomo data and
25 instructed his counsel to have "personal" data deleted. (Lee Decl. ¶25; Kim Decl.
26 ¶¶3, 4).

27     A forensic inspection of the Seagate Hard Drive shows that about 49,000
28 files and folders were permanently wiped from the device on February 6, 2012.

(Declaration of Mike Weil in Support of Reply, ¶11).

### 2. Delayed Return of the Seagate Hard Drive and the Thumb Drive

On February 8, 2012, Ocean Tomo's counsel, Carol Dwyer DeFreitas, received a telephone call from Jay Chung and Harry Kim, counsel for Lee. (DeFreitas Decl., ¶3). Mr. Chung stated they had downloaded and reviewed the TRO and OSC. (DeFreitas Decl., ¶ ). Mr. Chung further stated that the Seagate Hard Drive and a thumb drive were in his possession. (DeFreitas Decl., ¶ ).

Also on February 8, 2012, Ms. DeFreitas demanded the return of the Seagate Hard Drive and thumb drive. (DeFreitas Decl., ¶4, Exh. 2, p. 3). Mr. Chung responded that although he disagreed that Lee was bound by the TRO, he would deliver the devices to Ocean Tomo's counsel. (DeFreitas Decl., ¶5, Exh. 2, p. 3). . At no time did Mr. Chung disclose that data on the Seagate Hard Drive had been deleted or was going to be deleted and counsel assumed the data was being preserved, as it was in the possession of counsel. (DeFreitas Decl., ¶5) Again, on February 9, 2012, Ms. DeFreitas inquired when the devices would be returned. (DeFreitas Decl., ¶5, Exh. 2, p.2). Mr. Chung responded on February 10, 2012 that he would have the devices delivered that day. (DeFreitas Decl., ¶7, Exh. 2, p. 1).

### 3. Spoliation of Evidence on February 9, 2012

In his declaration, Harry Kim admitted that he instructed Fernando Flores to delete a folder called "1 Steve back up" on the Seagate Hard Drive on February 8, 2012. (Kim Decl. ¶5). Juan Galarza, a person of unknown qualifications, admitted that he deleted the folder called "1 Steve back up" of about 19.4 gigabytes from the Seagate Hard Drive on February 8, 2012. (Galarza Decl. ¶2).

A forensic examination of the Seagate Hard Drive shows that at least 7,166 files were permanently deleted on February 9, 2012. (Weil Decl. in support of Reply, ¶16). Thousands of these files clearly relate to Ocean Tomo business and were not of a "personal" nature as Lee claims. For example, the following files

were deleted named:

- C:\Lost Files\1 Ocean Tomo and Lee\KeySectionRelevant2008 biz plan.doc
- C:\Lost Files\1 Ocean Tomo and Lee\ICAP OT related\ICAP_Ocean_Tomo_BuyerSeller_Referral_Agreement_Ver.Soh.pdf
- C:\Lost Files\3 Lee\Study Lee\Sony Patent Survival Rates.xls
- C:\Lost Files\WLM lenovo\Patentratin bba\Drafts\08BE0017-0000000A.eml

(Weil Decl. in support of Reply, ¶16, Exh. 4).

In addition, a DiskRedactor program was used to overwrite all areas of the Seagate Hard Drive, rendering the data irretrievable. (Weil Decl. in support of Reply, ¶¶17, 18). Any evidence of use of Ocean Tomo data was deleted and cannot be retrieved. (Id.)

### B. Lee Was Not a Consultant After His Resignation and He Was Not Permitted to Keep the Laptop.

Lee resigned in mid-September 2011 to the former Ocean Tomo Chief Operating Officer, Jake Geleerd, by phone. (Declaration of Mary Lou Chuinard in Support of Ocean Tomo's Reply ("Chuinard Decl.") ¶2). On the same day, Ocean Tomo's Executive Committee spoke to Lee and accepted his formal resignation. (Chuinard Decl. ¶2). There was no mention of a contractor relationship or any ongoing relationship with Lee that would continue after September 2011. (Chuinard Decl. ¶2). Contrary to Lee's claims, Ocean Tomo's CEO James Malackowski did not ask him to work as a consultant. (Declaration of James Malackowski at ¶¶2-3).

The new interim Managing Director of OTPR, Elvir Causevic, met with Lee at the end of September 2011 to give him his final paycheck, exiting documents and to ensure the return of the Laptop. (Declaration of Elvir Causevic ("Causevic

Decl.") at ¶5). Lee assured Causevic that he would return the Laptop on his last day of work, which was September 30, 2011. (Causevic Decl. at ¶5 and Exhibit "1").

Also, Ocean Tomo conducted an exit interview with Lee on September 30, 2011, during which Lee agreed to send the Laptop to Ocean Tomo's Chicago headquarters by Federal Express that same day. (Chuinard Decl. ¶7).

Inexplicably, Lee failed to return the Laptop on September 30, 2011 as promised. (Chuinard Decl. ¶7). Ocean Tomo made numerous demands to Lee throughout early October to return the laptop as he had promised to do. (Chuinard Decl. ¶7).

At the time of Lee's last day of employment with Ocean Tomo on September 30, 2011, no consultancy arrangement existed between Lee and Ocean Tomo. (Chuinard Decl. ¶7). Although, Ocean Tomo sent Lee a standard Independent Contractor ("IC") Agreement during the first week of October 2011, in the event there was a need for Lee to assist on specific tasks in achieving a smooth transition, it was never entered into by the parties. (Chuinard Decl. ¶¶3, 4). At no time did Ocean Tomo indicate to Lee that as an independent contractor he would be entitled to keep his Ocean Tomo computer and it is not Ocean Tomo's policy to permit former employees who engage in specific transitional tasks to keep their computers. (Chuinard Decl. ¶4).

It was a surprise to Ocean Tomo when it received an invoice for services allegedly rendered by Lee as a "consultant" during the month of October 2011. (Chuinard Decl. ¶5). It was decided that the best thing to do would be to pay the invoice and to ensure that Ocean Tomo staff understood that there was no IC Agreement or working relationship with Lee and to refrain from discussing OTPR business with Lee. (Chuinard Decl. ¶¶5-6; Causevic Decl. ¶7).[1]

---

[1] The mid-December, 2011 communication by Mr. Lee, to Ocean Tomo's Mr. D'Souza does not evidence the provision of "consulting services" as Lee contends. Lee Decl. ¶ 7. Rather, it was an isolated telephone call that lead to nothing. D'Souza Decl. ¶¶ 4-5.

### C. Destruction of Data on the Laptop in October 2011

In his declaration, Lee attempts to excuse the destruction of the Laptop hard drive in October 2011 as an innocent mistake. However, Lee's story is not credible and demonstrates clear violations of the Employment Agreement and Computer Asset Agreement. Lee's portrayal of his conduct in copying and destroying Confidential Information does not add up as well.

Lee claims that he merely intended to delete his "personal confidential data" from the Laptop in October 2011 and inadvertently destroyed all of the data. (Lee Decl. ¶¶11-15). Lee admits that he did not return the original Ocean Tomo hard drive, but rather, returned a brand new hard drive that he purchased a computer store. (Lee Decl. ¶13). Without having access to the original Ocean Tomo hard drive in the Laptop, Lee's tale cannot be verified. (Weil Decl. in support of Reply, ¶¶23-25).

Lee further claims that he made a routine back-up of the entire Laptop hard drive at the end of September 2011. (Declaration of Steve Lee ("Lee Decl.") ¶14). However, Lee resigned from Ocean Tomo on September 16, 2011 and knew his last day of work was September 30, 2011. (Chuinard Decl. ¶¶2-4). Ocean Tomo instructed Lee to return the Laptop on his last day and did not allow Lee to keep any Ocean Tomo information. (Chuinard Decl. ¶4).

Lee admits that he kept all the OTPR files in his possession on the hard drive, which is a clear violation of the Employment Agreement and Computer Asset Agreement. (Lee Decl. ¶16). Moreover, Lee unjustifiably made more than one copy of the Laptop hard drive and, if his claims are credited, negligently "lost" one. (Lee Decl. ¶16). Clearly, Lee has demonstrated a complete disregard of his obligations to protect and safeguard Confidential Information under the Employment Agreement and Computer Asset Agreement. Lee does not care what happens to the copies he has made, to whom he discloses the information, or the serious risk of harm his negligence poses to Ocean Tomo.

### D. Service of the TRO and OSC on Lee

Lee apparently takes the position that he is not bound by the Court's TRO requiring him to return all Ocean Tomo Confidential Information and equipment because he was not personally served with the TRO and OSC. However, Lee was served with the OSC and TRO by email on Monday February 6, 2012, and therefore, has been on notice of this Court's orders. (DeFreitas Decl., Exhibit "1").

Moreover, Lee has been evading personal service and should be estopped from claiming that he was not on notice. Starting on February 3, 2012 through today, Ocean Tomo has diligently attempted to personally serve Lee with the TRO and OSC at his residence and place of business, however, Lee has not been seen and cannot be found at either location. (DeFreitas Decl. ¶8). An individual at Lee's place of business in Newport Beach, California informed Ocean Tomo's process servers that Lee went out of town. (DeFreitas Decl. ¶8).

Ocean Tomo's counsel informed Lee's counsel that he had apparently left town and requested that his counsel accept service. (DeFreitas Decl. ¶¶9-10). Lee's counsel refused to accept service. (DeFreitas Decl. ¶10). Lee should be estopped from claiming that service of the TRO was defective because he did not personally serve Ocean Tomo with his Opposition by 5:00 p.m. on February 10, 2012 as required by the OSC. (DeFreitas Decl. ¶11).

### III. OCEAN TOMO HAS A VERY HIGH PROBABILITY OF SUCCEEDING ON THE MERITS OF ITS CLAIMS

In addition to all of the facts and arguments presented in support of Ocean Tomo's *Ex Parte* Application for the TRO and OSC ("Application"), Lee's recent misconduct and egregious violations of the TRO further demonstrate Ocean Tomo's high likelihood of success on the merits of its claims.

### A. Ocean Tomo Should Prevail On Its Claims As A Result of Lee's Spoliation of Evidence

Spoliation includes the destruction and non-preservation of evidence relevant to pending (or reasonably foreseeable) litigation and amounts to a form of cheating that blatantly compromises the ideals of the trial as a search for truth and expropriates an injured party's legal remedy.  (*See Silvestri v. General Motors Corp.*, 271 F.3d 583, 590, 51 Fed. R. Serv. 3d 694 (4th Cir. 2001); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216, (S.D.N.Y. 2003); *Barsoum v. NYC Housing Authority*, 202 F.R.D. 396, 399, 50 Fed. R. Serv. 3d 26 (S.D.N.Y. 2001).)

If a court determines that a person disposed of or failed to preserve discoverable documents, including electronically stored information, in the face of litigation, the court has considerable discretion in deciding whether the person's actions should be punished.  (*See Fujitsu Ltd. v. Federal Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (determination of appropriate sanction is confined to the sound discretion of trial judges and is assessed on a case-by-case basis).)  The authority to sanction litigants for spoliation arises under the applicable rules of civil procedure and a court's inherent power.  (See, e.g., *Zubulake*, supra, at 94.)  Bad faith spoliation is strongly disfavored by the courts even where the party is only slightly prejudiced by the absence of the evidence.  (See, e.g., *Collazo-Santiago v. Toyota Motor Corp.*, 149 F.3d 23, 29, Prod. Liab. Rep. (CCH) P 15280 (1st Cir. 1998) (of particular importance when considering appropriateness of sanctions is prejudice to nonoffending party and degree of fault of the offending party); *Troup v. Tri-County Confinement Systems, Inc.*, 708 A.2d 825, 827, Prod. Liab. Rep. (CCH) P 15251 (Pa. Super. Ct. 1998) (even where defendants do not suffer serious prejudice, plaintiff's willful and knowing destruction of evidence is sufficient to warrant sanctions.)

Default and dismissal may be warranted for failure to comply with discovery orders pursuant to Rule 37. *Payne v. Exxon Corp.*, 121 F.3d 503, 505 (9th Cir. 1997). Steep monetary sanctions are further permissible. In *United States v. Philip Morris*, the court found that a significant number of emails had been lost and that defendants' employees were not following the company's own internal procedures for document preservation, resulting in a sanction of $2,750,000 on the defendant. (*U.S. v. Phillip Morris USA, Inc.*, 327 F.Supp.2d 21 (D.D.C. 2004).) In another case, a plaintiff discovered ten months into a lawsuit that the defendant was deleting emails in the normal course of business after thirty days. The court ordered the defendant to recover the deleted emails and invited the plaintiff to seek the appointment of a forensic computer expert to perform the recovery at the defendant's expense. (*Aero Products Intern, Inc. v. Intex Recreation Corp.*, 2004 WL 417193 (N.D. Ill. 2004).) In yet another case a defendant claimed email did not exist but it was later shown that it was in fact saved on backup tapes. The court ordered the defendant to restore the backup tapes at a cost of over $1,000,000. (*Linnen v. A.H. Robins Co., Inc.*, 10 Mass. L. Rptr. 189, 1999 WL 462015 (Mass. Super. Ct. 1999).)

Lee cannot benefit from destroying evidence that is critical to Ocean Tomo's claims and should be sanctioned at the appropriate time with, *inter alia,* evidentiary sanctions.

### B. Misappropriation of Trade Secrets

#### 1. Ocean Tomo Has Protectable Trade Secrets and Confidential Information.

As set forth in the Application, Ocean Tomo clearly and specifically defined what it considers as Confidential Information and trade secrets, including

> (b) information concerning existing or contemplated products, services, technology, designs, processes, research or product developments of the Company or any of its Affiliates; (c) information concerning business

> plans, sales or marketing methods, methods of doing business, customer lists, customer usages and or requirements, or supplier information of the Company or any of its Affiliates; (d) information concerning the identity needs, purchase and payment patterns of, and credit terms, pricing of special relations with, the customers of the Company or any of its Affiliates; (e) information concerning the identity, net prices and credit terms of, and special relations with, the suppliers of the Company or any of its Affiliates; or (f) any other confidential information with the Company or any of its Affiliates may reasonably have the right to protect by patent, copyright or by keeping it secret and confidential

(Chuinard Decl in Support of Application., Exh. 1, §5.1).

Lee mistakenly relies on *Neothermia Corp. v. Rubicor Medical, Inc.*, 345 F. Supp. 2d 1042 (N.D. Cal. 2004) in support of this contention that Ocean Tomo's identification of trade secrets is inadequate. The court in *Neothermia* found that the employer did describe the subject trade secrets with sufficient particularity and further held that it was permissible for the employer to later supplement the definition as discovery progressed. *Id.* at 1044-1045. Here, Ocean Tomo has specifically defined what it considers to be Confidential Information and trade secret information and shown examples of file names that Lee wrongfully copied that would contain trade secret information.

However, Lee has now destroyed the evidence and metadata that would show what files he accessed and when he accessed them. Having unclean hands in destroying this critical metadata, Lee cannot now take the position that Ocean Tomo must identify such information at this stage. Rather, Lee should be subject to default or an adverse inference that the metadata the he deleted would in fact show that he accessed and used Ocean Tomo's trade secrets.

In addition, Lee fails to dispute that the Confidential Information and trade secrets were not generally known or available to the public or that they were developed by Ocean Tomo at significant time and expense. Similarly, Lee does not

dispute that Ocean Tomo took reasonable steps to protect the confidentiality of its proprietary and trade secret information by requiring its employees to sign confidentiality agreements, maintaining internal secrecy by dividing access to information into separate departments and employees, and restricting access to financial data and forecasts on a need-to-know basis.

### 2. Lee Has Misappropriated Trade Secrets and Has Threatened Further Misappropriation.

In addition to the facts set forth in support of the Application, Lee's recent misconduct shows that he has misappropriated trade secrets by acquiring such information through improper means. During the last week of Lee's employment, he was instructed by the Director of Operations and the interim Managing Director of OTPR to return the Laptop on his last day of work, which was September 30, 2011. Lee agreed to do so, yet failed to return the Laptop as promised. Lee knew that he did not have permission to keep the Laptop, secretly copied the entire hard drive and then destroyed it.

What is worse, though, is that Lee further destroyed data and files on the Seagate Hard Drive after the entry of the TRO and after he knew he was not authorized to be in possession of Ocean Tomo's trade secrets and Confidential Information. This misconduct establishes that Ocean Tomo has a high likelihood of success on the merits of its misappropriation of trade secrets claim.

### C. Ocean Tomo Has High Probability of Success on the Merits of its Claims for Breach of Contract, Violation of Penal Code section 502, the Computer Fraud Abuse Act, and Unfair Competition.

The Employment Agreement required Lee to immediately account for and return all Ocean Tomo equipment and Confidential Information. (Chuinard Decl. in support of Application, Exh. 1, §5.1). The Computer Asset Agreement and Employment Agreement required Lee to safeguard computer equipment and Confidential Information. (Chuinard Decl. in support of Application, Exh. 2). Lee

was instructed multiple times to return the Laptop by no later than September 30, 2012. Lee knew that he did not have permission to keep the Laptop or copy the hard drive, but did it anyway. Lee's mishandling of the Laptop and the hard drive resulted in damage to the devices and destruction of data, which Ocean Tomo may never recover at this point, due to Lee's spoliation of evidence. Lee's conduct has further caused Ocean Tomo to incur expenses in hiring Huron to analyze the laptop and spent in excess of $5,000 in attempting to recover data. (Weil Decl. in Support of Application, ¶16).

Accordingly, Ocean Tomo has demonstrated a likelihood of success on the merits of its claims for breach of contract, Violations of the Computer Fraud Abuse Act, California Penal Code section 502 and Business and Professions Code section 17200.

### IV. OCEAN TOMO DID NOT UNREASONABLY DELAY IN SEEKING INJUNCTIVE RELIEF

On January 24, 2012, Lee informed Ocean Tomo that Barney and PR LLC contacted him requesting that he of his plans to speak with Barney and PR, LLC and disclose potentially Confidential Information. (Declaration of Joel Lutzker in support of Application, Exhibit "1"). Ocean Tomo took immediate action in seeking injunctive relief in accordance with the Employment Agreement.

Lee stated that he was alerting Ocean Tomo of pursuant to section 5.1 of the Employment Agreement. (Lutzker Decl. in support of Application, Exhibit "1"). Section 5.1 of the Employment Agreement provides in relevant part that Lee shall not disclose the Confidential Information except

> "in response to a subpoena or similar legal process or to discovery proceedings, in each case brought or initiated by a third party concerning a matter in litigation or based upon advice of counsel that such disclosure is necessary under applicable law or regulation (and [Lee], to the extent reasonably practicable, has given the Company not less than **10 business days'** prior written notice of such disclosure)."

Ocean Tomo promptly filed the Complaint against Lee within 4 business

days of receipt of his January 24, 2012 email, which was sent after 11:00 p.m. Ocean Tomo further contacted Lee, requested an informal resolution to stipulate to an Injunction not to disclose Ocean Tomo Confidential Information, and requested a response by Monday, January 30, 2012. (Lee Decl., Exh. J). Lee did not respond and Ocean Tomo promptly filed the Application on Wednesday, February 2, 2012.

Ocean Tomo's good faith effort to work with Lee in accordance with the terms of the Employment Agreement cannot be construed as unreasonable delay.

## V. OCEAN TOMO WILL SUFFER IRREPARABLE HARM WITHOUT AN INJUNCTION.

Ocean Tomo has already suffered irreparable harm in the short time following the entry of the TRO, as a result of the destruction of the metadata that would show what files Lee accessed, how often they were accessed and when they were accessed. The destruction of this critical evidence cannot be undone and cannot be compensated by monetary damages.

Lee was not deterred by the TRO from further destroying Ocean Tomo Confidential Information and it is not likely that he will voluntarily or reliably refrain from disclosing, using, or keeping possession of this information without a Preliminary Injunction. As set forth in the Application, disclosure of the Confidential Information will cause Ocean Tomo to lose its competitive advantage and the value of its investment in developing its trade secrets. Loss of investment and competitive position is the type of damage that is not easily compensable by monetary damages if a preliminary injunction is not granted. *Team Gordon, Inc. v. Specialized Bicycle Components, Inc.*, 2010 U.S. Dist. LEXIS 130738, *13 (C.D. Cal. Nov. 18, 2010).

Lee's recent misconduct further demonstrates that he cannot be trusted not to disclosure of attorney-client privileges to Ocean Tomo's litigation adversary, which would be profoundly unfair and prejudicial to Ocean Tomo. Ocean Tomo's

legitimate efforts to protect privileged and work-product information hardly constitutes "a campaign of intimidation and an attempt to stifle the litigation process" as Lee asserts.

## VI. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST STRONGLY FAVORS THE ISSUANCE OF AN INJUNCTION

Lee has not shown that he will suffer any harm if a Preliminary Injunction is issued. Lee has no right or interest in Ocean Tomo's proprietary, trade secret, and Confidential Information. Lee has shown that he cannot be trusted to voluntarily conduct himself in accordance with the law, and any alleged injury he believes he will suffer must be discounted by the fat that he brought it on himself. *Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008)

Lee contends, in his Opposition, that he has agreed to return all Ocean Tomo data and will voluntarily refrain from disclosing information to Patent Ratings. However, a forensic analysis of the Seagate Hard Drives proves that Lee cannot be trusted despite his supposed "agreement." Countless Ocean Tomo files were deleted from the Seagate Hard Drive, despite Lee's claim that only "personal" data was deleted.

Moreover, public policy further favors protection of attorney-client privileges and trade secrets. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (U.S. 1981). *Continental Car-Na-Var Corp. v. Moseley*, 24 Cal. 2d 104, 110 (1944).

Lee misses the mark in arguing in his Opposition that these fundamental public policies do not apply here, because this is just one case involving one defendant. Enjoining Lee from using or disclosing Ocean Tomo's attorney-client information and trade secrets would promote these important public policies.

## VII. CONCLUSION

Based upon the foregoing, the Court should issue a Preliminary Injunction to restrain and enjoin Lee from disclosure and use of the Confidential Information and

order the return of the Confidential Information to Ocean Tomo, which he failed to do in violation of the Temporary Restraining Order.

The Court should further order Lee to immediately, on February 17, 2012, turn over all computers to which the Seagate Hard Drive was connected during the time period of September 1, 2011 to February 6, 2012 for forensic analysis.

DATED: February 15, 2012         BUCHALTER NEMER
                                 A Professional Corporation


                                 By: /s/ Carol Dwyer DeFreitas
                                     PETER D. HOLBROOK
                                     CAROL DWYER DEFREITAS
                                     Attorneys for Plaintiff
                                     OCEAN TOMO, LLC An Illinois
                                     Limited Liability Company

# PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is at BUCHALTER NEMER, A Professional Corporation, 18400 Von Karman Avenue, Suite 800, Irvine, California 92612-0514.

On the date set forth below, I served the foregoing document described as:

**REPLY TO LEE'S OPPOSITION TO ORDER TO HOW CAUSE RE: PRELIMINARY INJUNCTION TO ENJOIN AND RESTRAIN DEFENDANT**

on all other parties and/or their attorney(s) of record to this action by _____ faxing and/or

__X__ placing a true copy thereof in a sealed envelope as follows:

Jay Chung
Lee Anav Chung LLP
520 South Grand Avenue, Suite 1070
Los Angeles, CA 90071

☐ **BY MAIL**  I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service. The address(es) shown above is(are) the same as shown on the envelope. The envelope was placed for deposit in the United States Postal Service at Buchalter Nemer in Irvine, California on February 15, 2012. The envelope was sealed and placed for collection and mailing with first-class prepaid postage on this date following ordinary business practices.

☐ **BY FACSIMILE AND MAIL**  I caused the above-named document(s) to be sent via facsimile transmission to the law office(s) and facsimile number(s) stated above. The transmission was reported as complete and without error. A copy of the transmission report(s) properly issued by one or more of Buchalter, Nemer's three Xerox 745 WorkCenter facsimile machine(s) [telephone number(s): (213) 896-0400, (213) 896-0411, (213) 896-0408], and (213) 896-0409 is(are) made a part of this proof of service pursuant to CRC §2.306. I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service. The correspondence will be deposited in an envelope with the United States Postal Service this day in the ordinary course of business for mailing to the address(es) shown above. The envelope was sealed and placed for collection and mailing with the United States Postal Service at Buchalter Nemer in Irvine, California on February 15, 2012 following ordinary business practices.

☐ **BY OVERNIGHT DELIVERY**  On February 15, 2012, I placed the Federal Express/Overnite Express package for overnight delivery in a box or location regularly maintained by Federal Express/Overnite Express at my office, or I delivered the package to an authorized courier or driver authorized by Federal Express/Overnite Express to receive documents.  The package was placed in a sealed envelope or package designated by Federal Express/Overnite Express with delivery fees paid or provided for, addressed to the person(s) on whom it is to be served at the address(es) shown above, as last given by that person on any document filed in the cause; otherwise at that party's place of residence.

☒ **BY PERSONAL DELIVERY**  On February 15, 2012, I placed the above-referenced envelope or package in a box or location regularly maintained at my office for our messenger/courier service or I delivered the envelope or package to a courier or driver authorized by our messenger/courier service to receive documents.  The package was placed in a sealed envelope or package designated by our messenger/courier service with delivery fees paid or provided for, addressed to the person(s) on whom it is to be personally served at the address(es) shown above as last given by that person on any document filed in the cause.  The messenger/courier service was provided with instructions that the envelope or package be personally served on the addressee(s) by same day delivery (C.C.P. §1011).

☐ **BY EMAIL.**  On February 15, 2012, I caused the above-referenced document(s) to be sent in electronic PDF format as an attachment to an email addressed to the person(s) on whom such document(s) is/are to be served at the email address(es) shown above, as last given by that person(s) or as obtained from an internet website(s) relating to such person(s), and I did not receive an email response upon sending such email indicating that such email was not delivered.

☒   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.  Executed on February 15, 2012, at Irvine, California.

☐   I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  Executed on February 15, 2012, at Irvine, California.

_____           _____
            Raquel Moreno                              (Signature)